## Huston v. Huston.

*Divorce—Practice, C. P.—Right of co-respondent to intervene—Confession.*
1. In the absence of statutory authority, a co-respondent named in a libel for divorce has no right to intervene in the proceedings to protect his character.
2. Where, however, the libellant has agreed to the intervention and the master has reported against the divorce, the court, on exceptions to the master's report, will not disturb the record.

*Divorce—Adultery—Averments in libel—Evidence—Confession of wife.*
3. Where a libel for divorce filed by a husband charges adultery by respondent with another man specifically named, the proof must establish the illegal act with the man named.
4. Proof of adultery by the wife is not established where there is no other evidence of it than her confessions.

Divorce. Exceptions to master's report. C. P. Montgomery Co., June T., 1924, No. 159.

*Theodore Lane Bean*, for libellant; *Elgin H. Lenhart*, for co-respondent.

MILLER, P. J., Jan. 29, 1926.—The parties were married in 1907 and the husband's libel sets forth, as the only ground for their absolute divorce, that his wife, "on or about the 25th day of June, 1923, at the Borough of Norristown, County of Montgomery and State of Pennsylvania, did commit adultery with Clarence I. Moore."

Notwithstanding personal service of the subpœna, no appearance of counsel for Mrs. Huston was entered, nor was an answer filed, and neither she nor her counsel appeared before the master. So far as she is concerned, the application is uncontested.

However, the master reported against the divorce and libellant has excepted to his action on the grounds that his findings of fact are not supported by the testimony and his conclusions of law are in error. Before considering the case on its merits, it is felt that one of its incidental features, involving a question of practice, should, even though it is not at issue between the parties, receive some comment.

Promptly after the return-day of the subpœna, Mr. Moore, the co-respondent, presented his petition expressly denying having at any time committed adultery with the respondent, and averring that the action had been brought collusively and he had been informed would not be defended, and that his reputation would be damaged and his social and business position affected unless he were permitted to deny the allegation of the libel. It prayed for a rule on the libellant to show cause why he should not be allowed to intervene, to enter an appearance, to file an answer and to offer testimony at the hearing.

The rule was granted, but on both the libellant and respondent; counsel for libellant accepted service thereof and agreed it should be made absolute; it was served personally on the respondent, who did not appear on the return-day nor make answer thereto, and five days thereafter it was made absolute.

Huston *v.* Huston.

No formal appearance was thereafter entered on behalf of the co-respondent and no answer to the libel was ever made by him. In fact, although he had been allowed to intervene, no order to the prothonotary to make him an intervening defendant was ever filed. He did, however, appear with counsel before the master and his attorney cross-examined the libellant and his witnesses, offered the testimony of the co-respondent and certain witnesses on his client's behalf and argued the exceptions to the master's report when it appeared on the argument list. The only contest is, therefore, between the libellant and the co-respondent.

Notwithstanding that the rule to intervene was made absolute under the circumstances recited, we now are convinced that such should not have been done. In the absence of statute conferring such right, the person charged as *particeps criminis* with defendant in an act of adultery upon which the suit is based cannot intervene to protect his character: 19 Corpus Juris, 99, and cases cited. Though such proceedings may incidentally affect third persons, they are considered as involving only the right of the two spouses, as to which a third person has no legal right to be heard: 9 Ruling Case Law, 408, and cases cited.

This is clearly, in the absence of statute, the general rule; we find nothing to the contrary in the Pennsylvania cases, and Mr. Moore should not have been allowed to intervene as a party respondent. This, however, would not necessarily have absolutely denied him the opportunity to be heard. The co-respondent was, on application, allowed to do so in the uncontested case of Clay *v.* Clay, 21 Hun (N. Y.), 609, so that his right, not to be convicted unheard, might be secured so far as was consistent with the law in such cases and also in order to prevent imposition on the court. In Stearns *v.* Stearns, 10 Vermont, 540, the legal representative of the co-respondent was practically allowed to act as *amicus curiæ*. These cases are very exceptional in character, however, and went to the very verge of discretionary authority: Quigley *v.* Quigley, 45 Hun (N. Y.), 27; Burke *v.* Burke, 26 N. Y. Supp. 57. It is suggested in the last cited case that, as proper practice, the co-respondent may attend the trial and, if not called, offer himself as a witness, and, the ground for divorce being adultery, it is not likely that the court will decline to receive any light he may be able to throw on the issues to guide its action. See, also, Howell *v.* Howell, Anno. Cases, 1913 E, page 429 and note.

The case at bar having, notwithstanding the gravity of the ground for divorce, been uncontested, and libellant having voluntarily agreed that the co-respondent might enjoy all the privileges that he has exercised, and, for that matter, even more than he did embrace, we are not, at this stage of the proceeding, disposed to disturb the record and shall be content only to indicate for future guidance in similar cases that, as at present advised, it is our opinion that, in the absence of libellant's agreement that Mr. Moore might exercise the active participation in the case that he did exercise, his right thereto would have been a matter of grave doubt, and this is all the more true because of his failure to file an answer to the libel: Oxley *v.* Oxley, 191 Pa. 474. We shall, notwithstanding the foregoing, consider the record here as it comes to us.

We start with the definite premise that the libellant cannot have a decree of divorce upon any ground other than that alleged in the libel. Courts ought never to sever the marriage contract, but where the application is made in sincerity and truth, for the very cause in the libel set forth, and no other, and fully sustained by the testimony: Hexamer *v.* Hexamer, 42 Pa. Superior Ct. 226; Moses *v.* Moses, 77 Pa. Superior Ct. 154. That "very cause" here is not,

generally, that the respondent committed adultery, or did so with one or more men unknown to libellant, but that such was done on or about June 25, 1923, at Norristown, with Clarence I. Moore. It is specific as to the unlawful act, the time, the place and the person involved. What are the proofs to sustain it?

The child was born on April 17, 1924. It is, as we view the case, not necessary to find at this time that libellant was not its father, although respondent's failure to defend, and her confessions, her shame and expressions of sorrow, her nervous and disturbed mental condition, her efforts to restore her monthly periods in the late summer of 1923, her twice repeated attempts at suicide, her willingness to be taken away from her home and friends because of the gossip, the place where and the circumstances under which the child was born, and her voluntary relinquishment of the baby, whose father was represented to be unknown by the hospital authorites, all lend support to libellant's contention in this connection. It may here be conceded that the respondent is an adulteress and committed the offence sufficiently near to June 25, 1923, to be covered by the allegation that it had happened "on or about" that date. Furthermore, we shall assume for our present purpose that the Equity club-house is sufficiently near to Norristown to be embraced in a designation of the place where the act was committed as "at Norristown."

In order to reach the real question involved in the case, we shall assume these facts to have been sufficiently proven, although the testimony leaves the mind in grave doubt as to whether respondent did commit adultery in the summer of 1923 or that libellant is not the father of his wife's child.

This brings us to the real question in the case: Has libellant discharged the burden of establishing by the testimony that his wife's unlawful act, if committed at all, was committed with the co-respondent? Unless he has done so, he is not, under the libel, entitled to a decree.

He relies principally upon his wife's confessions to that effect, as made at different times to himself, to the family physician and to Mrs. Whitman, her intimate friend and neighbor, all three of whom testified in proof of such admissions. It is, however, a rule of policy not to found a sentence of divorce on confession alone: Morse v. Morse, 81 Pa. Superior Ct. 602; although, where it is full, confidential, reluctant, free from suspicion of collusion and corroborated by circumstances, it is ranked with the safest proofs: Matchin v. Matchin, 6 Pa. 332.

The burden of proof rests, of course, on the libellant, and its measure or degree has been variously defined as "a preponderance of evidence," "the clear proof of imperious reason," and "strict proof of every essential fact:" Heimer v. Heimer, 63 Pa. Superior Ct. 476, 479. What, therefore, is the proof of the co-respondent's connection with the wrong alleged outside of that to be found in the admissions of the respondent?

Both the libellant and his witness, Mrs. Whitman, testified that, were it not for the confession, they had no reason to believe that Mr. Moore, at any time during the summer of 1923, had had intercourse with the respondent. The testimony of the libellant as to non-access for the last seven or eight years, of doubtful competency at the best, was contradicted by his witnesses, Mrs. Whitman and Dr. Care, who told of his own admissions as to such access so recently as the latter part of May, 1923. The only evidence, other than the confession, offered in support of the co-respondent's connection with the matter consisted of proof of the fact that he and his wife had stayed for some time, during the summer of 1923, with several other married couples, including the Hustons and their daughter, all friends of each other, at the

Huston v. Huston.

Equity club-house along the Schuylkill River, near Norristown. There was not, however, a particle of evidence, either direct or circumstantial, to support the allegation that, while there, Mr. Moore and Mrs. Huston had had improper relations.

Mr. Moore testified in flat contradiction of the charge against him and was inferentially corroborated by his wife, and Mr. and Mrs. Peacock and Mr. and Mrs. Graham, who hapened to be spending the same summer at the club-house. Incredible as it may sound, Mr. and Mrs. Huston continued to reside together until August, 1924.

Except as to the repetition by the respondent of her admission, which involved the co-respondent, the record, as we view it, is bare of anything that bears the semblance of corroboration of it, so far as his participation in the wrong done the libellant is concerned, if any such were done, and its careful examination gives rise to the impression that the oft-repeated confession was made by an harassed and desperate woman, who was greatly disturbed mentally and who, when the first was obtained, had been given whiskey by the libellant.

Such examination of the record has not satisfied us that libellant has shown wrongdoing by the co-respondent by even the least severe degree of proof required by Pennsylvania law. The "very cause" of divorce set forth in his libel has not been fully sustained by the testimony. His application for divorce must, therefore, fail.

And now, Jan. 29, 1926, the exceptions are dismissed, the report of the master is approved and the prayer of the libel is refused.

From Aaron S. Swartz, Jr., Norristown, Pa.